# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| DAVID CAMERON, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>　　　　　　Defendants. | Case No.: 3:25-cv-00332-MOC-SCR<br><br>Hon. Max O. Cogburn, Jr.<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |
| ELIZABETH LEODLER, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　Plaintiff,<br><br>　　vs.<br><br>KRISPY KREME, INC., JOSH CHARLESWORTH, and JEREMIAH ASHUKIAN,<br><br>　　　　　　Defendants. | Case No.: 3:25-cv-00469-MOC-DCK<br><br>Hon. Max O. Cogburn, Jr.<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE WEST PALM BEACH POLICE PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS <u>LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL</u>**

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|---|
| I. | PRELIMINARY STATEMENT | | | 1 |
| II. | PROCEDURAL HISTORY | | | 3 |
| III. | FACTUAL BACKGROUND | | | 3 |
| IV. | ARGUMENT | | | 5 |
| | A. | The PSLRA Standard for Appointing Lead Plaintiff | | 5 |
| | B. | The Related Actions Should be Consolidated | | 6 |
| | C. | WPB Police Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff | | 6 |
| | | 1. | WPB Police Has Satisfied the PSLRA's Procedural Requirements | 6 |
| | | 2. | WPB Police Has the Largest Financial Interest in the Relief Sought by the Class | 7 |
| | | 3. | WPB Police Satisfies Rule 23's Typicality and Adequacy Requirements | 7 |
| | | 4. | WPB Police's Claims Are Typical of Those of the Class | 8 |
| | | 5. | WPB Police Will Fairly and Adequately Protect the Interests of the Class | 9 |
| | | 6. | WPB Police Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA | 9 |
| | D. | The Court Should Approve WPB Police's Selection of Counsel | | 11 |
| V. | CONCLUSION | | | 15 |

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*,
   No. 20-cv-4534, 2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ............................................ 13

*Fisher v. Fennec Pharm. Inc.*,
   No. 22-cv-115, 2022 WL 1462822 (M.D.N.C. May 9, 2022) ........................................ 8, 9, 11

*Horowitz v. SunEdison, Inc.*,
   No. 15-cv-1769, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016) ................................................ 3

*In re Gildan Activewear Inc. Sec. Litig.*,
   No. 08-cv-5048, 2010 WL 11746218 (S.D.N.Y. Sept. 20, 2010) ........................................... 13

*In re Robinhood Outage Litig.*,
   No. 20-cv-1626, 2020 WL 7330596 (N.D. Cal. July 14, 2020) ............................................. 13

*Knurr v. Orbital ATK, Inc.*,
   220 F. Supp. 3d 653 (E.D. Va. 2016) ................................................................................... 10

*Ollila v. Babcock & Wilcox Enters.*, Inc.,
   253 F. Supp. 3d 827 (W.D.N.C. 2017) ...................................................................... 7, 8, 9, 10

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................................ *passim*
15 U.S.C. § 78j(b) ........................................................................................................................ 3
15 U.S.C. § 78t(a) ........................................................................................................................ 3


**Rules**

Fed. R. Civ. P. 23 ................................................................................................................. *passim*

**Regulations**

17 C.F.R. § 240.10b-5 .................................................................................................................. 3

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995) ................... 10
S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 .................................................10

Proposed Lead Plaintiff the West Palm Beach Police Pension Fund ("WPB Police") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for an order: (1) consolidating the above-captioned securities class actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)");[1] (2) appointing WPB Police as Lead Plaintiff for a class (the "Class") of all investors that purchased or otherwise acquired Krispy Kreme, Inc. ("Krispy Kreme") securities between March 26, 2024 and May 7, 2025, inclusive (the "Class Period") in the above-captioned Related Actions; (3) approving its selection of Saxena White P.A. ("Saxena White") as Lead Counsel for the Class and Terpening Law PLLC ("Terpening Law") to serve as Local Counsel for the Class; and (4) granting any such other and further relief as the Court may deem just and proper.[2]

## I. PRELIMINARY STATEMENT

WPB Police—a sophisticated institutional investor that oversees approximately $500 million in assets on behalf of its beneficiaries and has significant experience serving as a lead plaintiff—respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff on behalf of the Class. WPB Police satisfies all of the prerequisites for lead plaintiff appointment. As set forth below, WPB Police incurred a loss of approximately $355,783 as calculated under the prevailing last-in-first-out ("LIFO") loss calculation method, on

---

[1] The Related Actions are *Cameron v. Krispy Kreme, Inc.*, No. 25-cv-0332 (W.D.N.C. filed May 16, 2025) (the "*Cameron* Action"), and *Leodler v. Krispy Kreme, Inc.*, No. 25-cv-0469 (W.D.N.C. filed June 30, 2025) (the "*Leodler* Action"). All emphases are added, and all citations are omitted herein unless otherwise indicated.

[2] WPB Police respectfully requests leave from compliance with Local Civil Rule 7.1(b) since under the PSLRA's procedures it is unknown at the time of filing whether other investors intend to seek similar relief.

1

its purchases of Krispy Kreme securities.[3] Accordingly, WPB Police has a powerful economic interest in directing the litigation and recovering the losses suffered by the Class—an interest believed to be greater than that of any competing movant.

WPB Police also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of absent Class members and it will fairly and adequately represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). WPB Police is familiar with the obligations and responsibilities of the Lead Plaintiff, is not subject to any unique defenses, and has the incentive and ability to effectively supervise the prosecution of the Action in the best interests of the Class. Indeed, the PSLRA's legislative history shows that WPB Police is precisely the type of institutional investor whose participation in securities class actions the PSLRA was meant to foster. In short, WPB Police is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

WPB Police also respectfully requests that the Court approve its selection of Saxena White to serve as Lead Counsel, and Terpening Law to serve as Local Counsel for the Class. Saxena White is a leading national law firm specializing in representing institutional investors in securities and shareholder litigation. Saxena White has substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this Circuit and throughout the nation, and the expertise and resources to prosecute litigation of this complexity and scale. Similarly, Terpening Law has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level.

---

[3] WPB Police's transactions in Krispy Kreme securities during the Class Period are set forth in the certification attached as Exhibit A to the Declaration of William R. Terpening in Support of WPB Police's Motion for Consolidation, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Terpening Decl."), filed concurrently herewith. A chart setting forth the calculation of WPB Police's losses is attached as Exhibit B to the Terpening Decl.

## II. PROCEDURAL HISTORY

Pending before the Court are the above-captioned Related Actions brought on behalf of the Class. The *Cameron* Action was filed on behalf of persons and entities that purchased or otherwise acquired Krispy Kreme securities between February 25, 2025 and May 7, 2025, inclusive. The *Leodler* Action was filed on behalf of all investors who purchased or otherwise acquired Krispy Kreme securities between March 26, 2024 to May 7, 2025, inclusive. While the Related Actions assert different, albeit overlapping, class periods, for purposes of appointing a lead plaintiff, the longest alleged class period controls. *See, e.g.*, *Horowitz v. SunEdison, Inc.*, No. 15-cv-1769, 2016 WL 1161600, at *3 (E.D. Mo. Mar. 24, 2016) (applying the "most inclusive class period" in determining the largest financial interest). The Related Actions are brought against: (1) Krispy Kreme;[4] (2) Josh Charlesworth ("Charlesworth"), Krispy Kreme's Chief Executive Officer ("CEO"), Director, and President; and (3) Jeremiah Ashukian ("Ashukian"), Krispy Kreme's Chief Financial Officer (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

## III. FACTUAL BACKGROUND

Krispy Kreme produces doughnuts. On March 26, 2024, Krispy Kreme announced a partnership with McDonald's Corporation ("McDonald's") to offer its doughnuts in McDonald's restaurants nationwide, beginning with an initial launch of 160 restaurants in Louisville Kentucky, and phased rollouts in the second half of 2024. Throughout the Class Period, Defendants touted the success of the "smooth" McDonald's rollout and partnership, projecting expansion to as many

---

[4] Krispy Kreme is headquartered in Charlotte, North Carolina. The Company's common stock trades on the Nasdaq Global Select Market under the ticker symbol "DNUT."

3

as 12,000 restaurants by 2026. Defendants also assured investors of the strong demand for Krispy Kreme doughnuts at McDonald's restaurants.

The Action alleges that Defendants made false and/or misleading statements about the success and viability of the McDonald's partnership and failed to disclose among other things: (1) that demand for Krispy Kreme products declined materially at McDonald's locations after the initial marketing launch; (2) that demand at McDonald's locations was a driver of declining average sales per door per week; (3) that the partnership with McDonald's was not profitable; (4) that the foregoing posed a substantial risk to maintaining the partnership with McDonald's; (5) that, as a result, the Company would pause expansion into new McDonald's locations.

On February 25, 2025, Krispy Kreme reported its fourth quarter 2024 financial results, disclosing a net revenue decline of 10.4% year-over-year. On this news, the price of Krispy Kreme shares fell $2.00 per share, or approximately 21%, to close at $7.13 per share on the same day.

The truth was fully revealed on May 8, 2025, when Krispy Kreme announced disappointing first quarter 2024 financial results, including a net revenue decline of 15.3% year-over-year. Krispy Kreme further admitted that it was "reassessing [its] deployment schedule together with McDonald's," that "demand dropped below our expectations, requiring intervention," and that the Company was "withdrawing [its] prior full year outlook and not updating it" due in part to "uncertainty around the McDonald's deployment schedule." On this news, the price of Krispy Kreme securities fell $1.07 per share, or approximately 25%, to close at $3.26 per share on May 8, 2025.

Defendants' material misrepresentations and omissions, and the revelations thereof, thus caused WPB Police and the Class to incur substantial damages.

4

## IV. ARGUMENT

### A. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(I); *see also* 15 U.S.C. § 78u-4(a)(3)(B). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the movant who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

5

## B. The Related Actions Should be Consolidated

Two Related Actions are pending before the Court. The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Rule 42(a) specifies that consolidation is appropriate when actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a).

Here, the Related Actions are well-suited for consolidation. Both allege a substantially similar, unlawful, and/or fraudulent scheme relating to similar parties, transactions, and events during overlapping time frames, and allege that Defendants made materially false and misleading statements and omissions concerning Krispy Kreme's business and prospects. In addition, because the Related Actions are based on similar facts and involve the same subject matter, the same discovery will be relevant to both actions.

Accordingly, consolidation is appropriate under Rule 42(a) and the PSLRA. WPB Police respectfully submits that the Related Actions should be consolidated.

## C. WPB Police Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff

WPB Police respectfully submits that it is presumptively the "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any qualified movant, and satisfies Rule 23's typicality and adequacy requirements.

### 1. WPB Police Has Satisfied the PSLRA's Procedural Requirements

On May 16, 2025, notice regarding the pending nature of this case was published on *BusinessWire* alerting investors to the filing of the Action and the July 15, 2025 deadline for seeking appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Notice, Terpening

6

Decl., Ex. C. Thus, pursuant to the PSLRA, any member of the proposed Class may apply for appointment as Lead Plaintiff within 60 days of the publication of the notice, *i.e.*, on or before July 15, 2025. Accordingly, WPB Police has timely filed its motion to serve as Lead Plaintiff.

### 2. WPB Police Has the Largest Financial Interest in the Relief Sought by the Class

WPB Police should be appointed Lead Plaintiff because it has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Ollila v. Babcock & Wilcox Enters.*, Inc., 253 F. Supp. 3d 827, 830 (W.D.N.C. 2017) (finding that the movant claiming the largest loss had the largest financial interest).

During the Class Period, WPB Police sustained a loss of approximately $355,783 on a LIFO basis on its transactions in Krispy Kreme securities. *See* Terpening Decl., Exs. A, B. WPB Police is unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, WPB Police has the largest financial interest of any qualified movant seeking Lead Plaintiff status and, because it satisfies the applicable requirements of Rule 23, as discussed below, is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. WPB Police Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule

7

23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). However, at this stage of the litigation, "[a] presumptive lead plaintiff need make only a prima facie showing that it meets the typicality and adequacy requirements of Rule 23." *Ollila*, 253 F. Supp. 3d at 830.

### 4. WPB Police's Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is satisfied when "a lead plaintiff suffer[s] the same injuries as the class as a result of the defendant's conduct and has claims based on the same legal issues." *Fisher v. Fennec Pharm. Inc.*, No. 22-cv-115, 2022 WL 1462822, at *2 (M.D.N.C. May 9, 2022) (citation omitted).

The typicality requirement is satisfied here because WPB Police, which is not subject to any unique or special defenses, seeks the same relief and advances the same legal theories as the other Class members. Like all members of the Class, WPB Police: (1) purchased Krispy Kreme securities during the Class Period; (2) at prices that were artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) was damaged thereby when the truth was revealed. *See Ollila*, 253 F. Supp. 3d at 830 (finding lead plaintiff movant had satisfied the typicality requirement as the movant's claims "are based on the same interests and same injuries alleged by other purported class members—that [company]'s alleged misrepresentations and omissions of fact caused substantial loss to investors like [movant]."). As such, WPB Police's claims are typical of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### 5. WPB Police Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it will "fairly and adequately protect the interests of the class." *Ollila*, 253 F. Supp. 3d at 830. The adequacy requirement is satisfied if "the purported class representative and its attorney are capable of pursuing the litigation and [] neither has a conflict of interest with other class members." *Fisher*, 2022 WL 1462822, at *2 (citation omitted).

Here, WPB Police will fairly and adequately represent the interests of the proposed Class. WPB Police's interests are aligned with those of the other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflict of interest exists between WPB Police and the other Class members. As an institutional investor with a substantial financial interest in the litigation, WPB Police has the resources, experience, and incentive to faithfully represent the Class and vigorously prosecute the litigation.

WPB Police has further demonstrated its adequacy through its selection of Saxena White as proposed Lead Counsel for the Class. As discussed below, *see infra* Section IV.D, Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively prosecute complex securities class actions and other forms of shareholder litigation. *See Ollila*, 253 F. Supp. 3d at 830 (finding adequacy requirement satisfied where "[institutional investor movant] and the selected attorney are capable of pursuing this litigation and neither have a conflict of interests with other members of the purported class."). Accordingly, WPB Police satisfies the adequacy requirement.

### 6. WPB Police Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, WPB Police is the paradigmatic lead plaintiff envisioned by Congress in its enactment of the

9

PSLRA. WPB Police is a sophisticated institutional investor with a substantial financial interest in the litigation. *See Ollila*, 253 F. Supp. 3d at 831 (noting that "the purpose of the PSLRA was to encourage institutional investors to serve as lead plaintiff") (citing *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653, 662-63 (E.D. Va. 2016)); *see also* S. Rep. No. 104-98, at 11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in the class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

WPB Police, which has more than $500 million in assets under management, has significant resources and a substantial financial interest in this litigation. Therefore, WPB Police has the ability, resources, and incentive to vigorously represent the claims of the Class and supervise Class counsel. WPB Police is also well aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel. WPB Police's understanding of the fiduciary duties of a lead plaintiff under the PSLRA is informed by its prior experience in successfully prosecuting and resolving securities actions under the PSLRA, including an action where Saxena White served as lead counsel. *See Oliveira v. Home Loan Servicing Sols., Ltd.*, No. 16-cv-60165 (S.D. Fla.) ($6 million recovery, with Saxena White serving as lead counsel); *In re DFC Global Corp. Sec. Litig.*, No. 13-cv-6731 (E.D. Pa.) ($30 million recovery); and *In re BUCA, Inc. Sec. Litig.*, No. 05-cv-1762 (D. Minn.) ($1.6 million recovery). WPB Police currently serves as lead plaintiff in *In re SelectQuote, Inc. Sec. Litig.*, No. 21-cv-6903 (S.D.N.Y.) and *In re Xponential Fitness Sec. Litig.*, No. 24-cv-0285 (C.D. Cal.). In addition, WPB Police is willing to oversee the vigorous prosecution of the Related Actions and has pledged to

10

"provid[e] testimony at deposition and trial, if necessary." Certification, Terpening Decl., Ex. A. Thus, WPB Police is the paradigmatic lead plaintiff as contemplated by the PSLRA.

### D. The Court Should Approve WPB Police's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Fisher*, 2022 WL 1462822, at *2 (discussing lead counsel appointment and noting that "deference should be given to the lead plaintiff's selection of counsel.") (citation omitted). WPB Police respectfully submits that its selection of Saxena White as Lead Counsel for the Class and Terpening Law as Local Counsel for the Class should be approved. *See* Firm Resumes, Terpening Decl., Ex. D & E.

Saxena White has substantial experience representing investors and a demonstrated history of success serving as lead counsel in securities class actions and other forms of complex shareholder litigation, including in this Circuit. *See* Terpening Decl., Ex. D (Firm resume of Saxena White). Saxena White's track record in securities litigation includes: the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.); the $73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Cos. Inc.*, No. 18-cv-871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No.

11

19-cv-70 (S.D.N.Y.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 21-cv-444 (E.D. Va.); the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.); the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.); the $28 million recovery in *Milbeck v. TrueCar, Inc.*, No. 18-cv-2612 (C.D. Cal.); the $25 million recovery in *Plymouth County Retirement System v. GTT Commc'ns, Inc.*, No. 19-cv-00982 (E.D. Va.); the $23.5 million recovery in *Plymouth County Retirement System v. Evolent Health, Inc.*, No. 19-cv-01031 (E.D. Va.); the $20.25 million recovery in *Plumbers & Pipefitters Local Union #295 Pension Fund v. Caredx, Inc.*, No. 22-cv-3023 (N.D. Cal.) (pending final approval); the $18.25 million recovery in *In re Merit Systems, Inc. Securities Litigation*, No. 19-cv-2326 (C.D. Cal.); the $15.5 million recovery in *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Credit Suisse Group AG*, No. 17-cv-10014 (S.D.N.Y); and the $11 million recovery in *Kieppel v. Health Ins. Innovations, Inc.*, No. 19-cv-421 (M.D. Fla.).

Moreover, Saxena White also has secured significant recoveries for injured shareholders through derivative litigation. For example, Saxena White achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 16-cv-05541-JST (N.D. Cal.). Saxena White also achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-04534 (S.D. Ohio). Indeed, Saxena White was selected as Co-Lead Counsel for the *First Energy* matter not only for its "impressive"

and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-4534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020).

By approving WPB Police's choice of Lead Counsel, this Court will also advance the important goal of increasing diversity among class counsel, so that the attorneys leading the case "reflect the diversity of the proposed national class." *In re Robinhood Outage Litig.*, No. 20-cv-1626, 2020 WL 7330596, at *2 (N.D. Cal. July 14, 2020); *see also In re Gildan Activewear Inc. Sec. Litig.*, No. 08-cv-5048, 2010 WL 11746218, at *1 (S.D.N.Y. Sept. 20, 2010) (because "proposed class includes thousands of participants, both male and female, arguably from diverse backgrounds, . . . it is therefore important to all concerned that there is evidence of diversity, in terms of race and gender, in the class counsel I appoint"). As a federally certified woman- and minority-owned firm specializing in representing injured investors as plaintiffs in securities litigation, Saxena White is committed to diversity.

For example, Saxena White was selected by the Chief Judge of the Southern District of Ohio as Co-Lead Counsel in an important shareholder derivative action involving a corruption and bribery scheme, not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-4534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020). Saxena White would staff this litigation with a diverse team of qualified and capable attorneys that reflects the diversity of the Class.

WPB Police has selected Terpening Law to serve as Local Counsel for the Class. Terpening Law has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level. *See* Terpening Decl., Ex. E (Firm resume of Terpening Law). For example, the lawyer at Terpening Law who will lead as local counsel in this case is William R. Terpening, whose experience is well known to this Court. . Mr. Terpening began his legal career in 2001 as a term law clerk to the Honorable Graham C. Mullen, United States District Court for the Western District of North Carolina, in which capacity he helped manage complex cases, including securities litigation matters, for this Court. After that, Mr. Terpening was an associate in the highly-respected Securities Litigation Group of international law firm Alston & Bird, LLP, until late 2006. In that capacity, Mr. Terpening's entire practice focus was securities litigation, particularly including litigating securities class actions. In the nineteen years since Mr. Terpening left Alston & Bird to operate his own boutique law firm, a substantial part of Mr. Terpening's practice has included serving as lead counsel in complex fraud litigation matters, with a focus on securities litigation. He is nationally experienced in other types of securities matters as well, including as serving as lead defense counsel for the principal defendant in a criminal securities fraud case that, at the time, was the largest criminal securities fraud matter ever (in terms of alleged loss amount) in the state of Ohio: *United States v. Poulsen*. Additional relevant experience includes work on both the plaintiff and defendant side in significant False Claims Act *qui tam* actions, tax controversy work, and healthcare fraud matters. In addition to his experience in relevant subject areas, Mr. Terpening is well-suited for the role of local counsel because he regularly appears before this Court.

Saxena White and Terpening Law have the skill, knowledge, and experience that will enable WPB Police to prosecute this action effectively and expeditiously. Thus, the Court may be

14

assured by appointing WPB Police as Lead Plaintiff and approving its selection of Lead Counsel and Local Counsel that the Class will receive the highest caliber of representation. Accordingly, the Court should approve WPB Police's selection of Saxena White to serve as Lead Counsel and Terpening Law to serve as Local Counsel for the Class.

## V.    CONCLUSION

For the foregoing reasons, WPB Police respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint WPB Police to serve as Lead Plaintiff for the Class; (3) approve WPB Police's selection of Saxena White to serve as Lead Counsel for the Class and for Terpening Law to serve as Local Counsel for the Class; and (4) grant any such other and further relief as the Court may deem just and proper.

Dated: July 15, 2025                                              Respectfully submitted,

**TERPENING LAW PLLC**

By: */s/ William R. Terpening*

William R. Terpening
NC Bar No. 36418
221 West 11th Street
Charlotte, NC 28202
Tel.: (980) 265-1700
terpening@terpeninglaw.com

*Local Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund, and Proposed Local Counsel for the Class*

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund, and Proposed Lead Counsel for the Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff West Palm Beach Police Pension Fund*

16

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 15, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ William R. Terpening*
William R. Terpening
